**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JAMES B. SCULLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 CV 03190 |
| | ) | |
| AVM BIOTECHNOLOGY, INC., | ) | Judge John J. Tharp, Jr. |
| THERESA DEISHER, DANIEL SPINA | ) | |
| AND GERALD MCLEAN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

For the reasons set forth in the Statement below, the defendants' motion to enforce settlement agreement [32] is denied. The defendants' motion to dismiss [11] remains under consideration.

**STATEMENT**

Defendants AVM Biotechnology, Inc. (AVM), Theresa Deisher, Daniel Spina, and Gerald McLean move to enforce a settlement agreement that they contend was reached with the plaintiff James B. Scully during negotiations to resolve this action. R. 32.[1] The defendants argue that, after months of negotiations, the parties reached an enforceable settlement agreement on January 29, 2026; alternatively, the defendants say, an agreement was reached no later than May 1, 2026. R. 32 ¶ 5-20; R. 37 at 1-2. Scully responds that no binding agreement was ever formed because he never accepted the defendants' offer, the parties intended to be bound only upon execution of a written agreement and he withdrew from negotiations before any enforceable contract came into existence. R. 36 at 1-11.

**Background**

On January 28, 2026, the defendants, through counsel, offered to settle the dispute for $79,000, "contingent on" a set of non-financial terms comprising: confidentiality (mutual); non-disparagement (mutual); a full/general release of claims against the defendants (not limited to employment claims); a full/general covenant not to sue (not limited to employment-related claims); and a "no rehire" provision including any affiliates of AVM. The defendants' counsel also volunteered to "prepare a draft agreement for your review" if the plaintiff was willing to accept the settlement offer. On the 29th, the plaintiff accepted the defendants' "settlement offer of a lump

---

[1] Citations to the docket are indicated by "R." followed by the docket number, and, where necessary, a page or paragraph citation.

sum payment of $79,000 contingent upon agreement to the non-financial terms," and requested "a copy of the draft agreement."

The parties exchanged draft settlement agreements throughout February, March and April 2026. R. 32 ¶ 5. The defendants identify three issues that remained unresolved as of May 1: (1) whether payment would be made within seven or eight days after plaintiff supplied executed settlement documents and tax forms; (2) wording concerning the tax-reporting treatment of settlement proceeds; and (3) language addressing a contingency involving release of the plaintiff's wage lien. *Id.* ¶ 6. The plaintiff identifies no additional unresolved terms affecting the substance of the parties' bargain.

On May 5, 2026, however, the plaintiff's counsel reported to the defendants' counsel that he had been directed to withdraw the plaintiff's settlement demand of $79,000 because the plaintiff had decided it "would not be in his best interest to enter into the settlement agreement as currently proposed when the Court's ruling on the Motion to Dismiss is expected within a week or so."[2] R. 32 at 49. The defendants promptly filed the present motion.

**Analysis**

A federal district court possesses the inherent authority to enforce a settlement agreement in a case pending before it. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). Whether the parties formed an enforceable agreement, however, is governed by state contract law. *Lynch, Inc., v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). In this case, Illinois law applies. R. 32 ¶ 9.

Under Illinois law, "a settlement agreement is considered a contract, and construction and enforcement of settlement agreements are governed by principles of contract law." *Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.,* 989 F.3d 556 (7th Cir. 2021), citing *Cannon v. Burge*, 752 F.3d 1079, 1088 (7th Cir. 2014). A settlement agreement is enforceable if there was a meeting of the minds, or mutual assent, as to all material terms. *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016).

The Court finds that the parties did not have an enforceable settlement agreement because 1) the defendants have not established that the plaintiff accepted the settlement agreement, and 2) the parties contemplated execution of a final written agreement as a prerequisite to becoming bound, and the agreement was not executed. The Court discusses each issue in turn.

I.     <u>**Defendants Have Not Established That the Plaintiff Accepted the Settlement Agreement**</u>

The defendants first contend that the parties reached an enforceable settlement agreement on January 29, 2026. R. 32 ¶ 8. The Court disagrees. On January 28, the defendants offered to settle the case for $79,000 together with a set of proposed non-financial terms. R. 32 at 10. The

---

[2] On April 13, 2026, the Court entered an order, in response to an inquiry under LR 78.5, advising the parties that it anticipated ruling on the defendants' pending motion to dismiss within the next 30 days. R. 31. At that time, the court had not been advised that the parties were negotiating a settlement agreement.

following day, plaintiff's counsel responded that his client had authorized him to accept the $79,000 payment "contingent upon agreement to the non-financial terms."[3] *Id.*

That response did not create a contract. Under Illinois law, "[a] conditional acceptance is no acceptance." *Karris v. U.S. Equities Dev.,* 376 Ill. App. 3d 544, 550-51, 876 N.E.2nd 68, 694 (2007) (quoting *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 80, 684 N.E.2d 816, 821 (1997)). Rather, a purported acceptance that is conditioned on agreement to additional or different terms operates as a counteroffer. *Id.*, *see also,* Restatement (Second) of Contracts § 59 ("A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer."). Thus, the plaintiff's January 29 response was not an acceptance of the defendants' officer; it was a counteroffer.

The parties' subsequent communications followed the same pattern. For more than three months, the parties exchanged draft agreements, proposed revisions, and revised language. R. 32 ¶ 5. Throughout that process, the plaintiff continued to propose modifications to the draft agreement and defendants continued to respond with revisions of their own. *Id.*

The defendants maintain that, even if the January 29 communication was a counteroffer, the parties nevertheless reached an enforceable settlement agreement by May 1, 2026 because they had agreed on all material terms by then. *Id.* ¶ 6. They emphasize that the only remaining disputes concerned matters such as payment timing and tax-reporting language, which they characterize as "minor and ancillary issues that did not alter any material term of the agreement." *Id.* As the defendants correctly point out, Illinois law does not require agreement on every conceivable detail before a settlement becomes enforceable. R. 32 ¶ 12; *Beverly*, 817 F.3d at 333; *McDonald v. Adamson*, No. 13-CV-2262, 2023 WL 11898797 *3 (N.D. Ill. July 26, 2023), <u>report and recommendation adopted sub nom.</u> *McDonald v. Hughes*, No. 13-CV-2262, 2023 WL 11898796 (N.D. Ill. Dec. 18, 2023).

That argument has force, but it does not overcome the absence of acceptance. The issue is not simply whether the remaining disputes were material. The issue is whether the plaintiff ever accepted the defendant's proposal.

The defendants point to the plaintiff's April 30 email as evidence that he did. *Id.* ¶ 14. In that email, the plaintiff stated that he was "willing to sign" the attached revised agreement. *Id.* at 16. According to defendants, that statement reflects assent to the material terms of the settlement. *Id.* ¶ 14.

---

[3] The defendants brief erroneously states that on January 29, Plaintiff's counsel accepted the non-financial terms included in his offer of January 28. R. 32 ¶ 13. Not so. Plaintiff's counsel made clear that acceptance of the settlement amount was "contingent upon agreement to the non-financial terms," a caveat that would have been unnecessary had he been accepting those non-financial terms at that point. R. 32 at 10. A contingency is not needed for an event that has already occurred.

3

But the same email also made clear that the plaintiff was willing to sign only the revised version he was transmitting, not the defendants' prior proposal. *Id*. at 16. The plaintiff's counsel expressly stated that the plaintiff "did not accept" the defendants' proposed language concerning the timing of payment and tax consequences. *Id.* The email therefore did not communicate acceptance of the defendants' proposal; it merely transmitted another revised proposal—another counteroffer.

As previously discussed, under Illinois law, a purposed accepted conditioned upon assent to additional or different terms remains a counteroffer rather than an acceptance. *Karris,* 376 Ill. App. 3d at 550-51; Restatement (Second) of Contracts § 59. Indeed, defendants themselves characterized the plaintiff's proposed revisions as substantial, responding that "these changes are not minor and go beyond what I was anticipating based on your last edits and our call." R. 32 at 18. That response reinforces the conclusion that both sides continued to view the negotiations as ongoing rather than final.

Illinois law requires an objective manifestation of mutual assent, and a proposed agreement is not accepted until acceptance is communicated to the offeror. *Russell v. Dart*, No. 14-CV-4683, 2015 WL 1502926 *4 (N.D. Ill. Mar. 26, 2015), aff'd sub nom. *Russell v. Cook Cnty.*, 661 F. App'x 443 (7th Cir. 2016), and aff'd sub nom. *Russell v. Cook Cnty.*, 661 F. App'x 443 (7th Cir. 2016) (citing *Sementa v. Tylman*, 595 N.E.2d 688, 692 (Ill. App. Ct. 1992)) ("No contract was formed because defendant did not convey his acceptance of the proposed agreement.")

Here, defendants have identified no communication in which the plaintiff conveyed unequivocal acceptance of the defendants' final proposal. In one email, the defendants state that "we have an agreement to the material terms," but the plaintiffs never make a similar affirmative statement of agreement or acceptance. R. 37 at 28. The Court recognizes that a reasonable argument can be made that the parties had largely reached agreement on the substantive terms of settlement by this stage of negotiations. But that does not mean that plaintiff had actually accepted the defendants' final proposal. Because defendants have not demonstrated the requisite manifestation of mutual assent, they have not established the existence of an enforceable settlement agreement.

## II. The Parties Contemplated Execution of a Final Agreement As a Prerequisite to Becoming Bound

The Court's conclusion is reinforced by the parties' treatment of the proposed settlement agreement itself. To be sure, Illinois law does not treat every contemplated writing as a condition precedent to contract formation. Settlement agreements may be enforceable even where the parties anticipate later reducing their agreement to writing. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992); *Lampe v. O'Toole,* 292 Ill. App. 3d 144, 147, 685 N.E.2d 423 (1997).

But Illinois law is equally clear that where the parties intend execution of a formal agreement to be a prerequisite to being bound, no contract arises until that document is executed. *Interway, Inc. v. Alagna*, 85 Ill App. 3d 1094, 1098, 407 N.E.2d 615, 618 (1980); *IK Corp v. One Fin. Place P'ship*, 2000 Ill. App. 3d 802, 807, 558 N.E.2d 161, 166 (1990); *Wells Fargo Funding v. Draper & Kramer Mortg. Corp.*, 608 F. Supp. 2d 981 n.4 (N.D. Ill. 2009). As the Seventh Circuit has explained, "[w]hen negotiators say that agreement is subject to a more definitive document,

Illinois treats this as demonstrating intent not to be bound until that document has been prepared and signed." *PFT Roberson, Inc. v. Volvo Trucks N. Am.*, 420 F.3d 728, 731 (7th Cir. 2005); *Quake Construction, Inc. v. American Airlines,* 141 Ill.2d 281, 287, 152 Ill. Dec. 308, 565 N.E.2d 990, 993 (1990). Until then each party is "free to walk away...." *Solaia Technology LLC v. ArvinMeritor,* 2006 WL 695699 at *10 (N.D. Ill. 2006).

The question, therefore, is not whether the parties anticipated a written agreement. It is whether the objective evidence demonstrates that they intended execution of that agreement to be the event that rendered the settlement binding. The Court concludes that it does.

Throughout the negotiations, the parties consistently discussed settlement as something that would be finalized through execution of a written agreement. On March 13, 2026, plaintiff's counsel proposed that the parties work toward "a final and fully executed Settlement Agreement" and did so only "assuming a final agreement can be reached." R. 37 at 29. On April 20, 2026, plaintiff's counsel advised defendants that the plaintiff wanted "a signed agreement" by April 24 and otherwise intended to "withdraw our demand and allow the court proceedings to play out." R. 36-1 at 1.

These communications are difficult to reconcile with the proposition that the plaintiff already considered himself contractually bound. Had the plaintiff believed a binding settlement already existed, there would have been no settlement demand left to withdraw. The correspondence instead reflects an understanding that execution of a written agreement would mark the culmination of the settlement process.

The structure of the proposed agreement itself points in the same direction. The draft agreement included a waiver of the plaintiff's claims under the Age Discrimination in Employment Act and incorporated the protections required by the Older Workers Benefit Protection Act ("OWBPA"), including a provision permitting the plaintiff to revoke the agreement within seven days following "execution of this Agreement." R. 32 at 27. The Court does not rely on the OWBPA as an independent basis for declining enforcement. Rather, the significance of the provision is what it reveals about the parties' understanding of the settlement process.

The parties mutually agreed to include a provision whose operation depends expressly upon the execution of the agreement. The provision presupposed that execution is a meaningful event in the formation and finalization of settlement. The OWBPA itself likewise contemplates a written, executed agreement before an employee's waiver of ADEA claims becomes effective. *Id.* While not dispositive standing alone, the parties' incorporation of those statutory protections further supports the conclusion that they contemplated a final executed agreement before the settlement would become operative.

The OWBPA provision also highlights the practical difficulty with defendants' position. Because the agreement was never executed, the seven-day revocation period never commenced. The Court does not suggest that the plaintiff exercised a statutory revocation right or that the OWBPA independently defeats enforcement. Nevertheless, if the Court were to compel execution of the agreement, the plaintiff would immediately acquire a statutory (and contractual) right to

reconsider and revoke the waiver.[4] That circumstance does not control the outcome, but it further underscores the extent to which the parties structured the proposed settlement around execution of a final written agreement.

Taken together, the parties' communications and the structure of the proposed agreement demonstrate that they contemplated execution of a final written agreement as the event that would conclude negotiations and render the settlement operative.

Accordingly, the Court concludes that defendants have not carried their burden of establishing that the parties formed an enforceable settlement agreement before the plaintiff withdrew from negotiations on May 5, 2026. The plaintiff's May 5 communication was therefore not a repudiation of an existing contract but a withdrawal from ongoing settlement negotiations before a final agreement had been reached.

The defendants' motion to enforce settlement agreement [32] is therefore denied. Defendants' request for attorneys' fees and costs is also denied.

Date: June 24, 2026

John J. Tharp, Jr.
United States District Judge

---

[4] And were the court to grant the defendants' motion, their win would likely be a Pyrrhic victory at best.

6